IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ROBERT ALLEN FOREMAN,

        Petitioner,

    v.

RICK ANGELOZZI,

        Respondent.

Case No. 10-CV-3054-ST

FINDINGS AND RECOMMENDATION

Thomas J. Hester
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

John R. Kroger
Attorney General
Andrew Hallman
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 to challenge the legality of his underlying state convictions for Sodomy and Sexual Abuse. For the reasons that follow, the Petition for Writ of Habeas Corpus (docket #2) should be denied.

## BACKGROUND

The factual background for this case is described by the Oregon Court of Appeals as follows:

> At the time of the offenses for which defendant was convicted, G and mother lived in a trailer park in Sweet Home. G was three years old. G's great-grandmother lived in a trailer a few spaces away. Defendant, who lived in Lafayette, is great-grandmother's son and G's great-uncle.
>
> At the hearing on the state's motion *in limine,* mother testified to the facts that follow. Sometime in September, October, or November of 2000, G spent a night with great-grandmother in her home. When mother picked G up the next morning at about 8:30, defendant was there. Mother testified that, sometime between a week and a month later, G spent the night with mother's aunt. She complained to mother's aunt that urinating was painful, and mother's aunt told mother about the complaint when she picked G up the next day. Mother, who had herself been sexually abused as a child, became concerned that G had been abused. Later that evening, mother took G to the grocery store. As they walked from the parking lot to the store, using a tone she described as "friendly" and "playful," she asked G, "[H]as anybody ever touched you in your private parts?" G said, "Yes." Mother asked her, "Well, now who would do a thing like that?" G responded, "My Uncle Bob," referring to defendant. Mother asked her where he had touched her, and G pointed to her genital area. Mother then asked her where the touching had happened, and G told her that it had happened at great-grandmother's home. Mother decided to make a doctor's

2 - FINDINGS AND RECOMMENDATION

appointment to have G examined, and she asked her no further questions.

According to mother's testimony, around the same time, some of G's behavior changed. Mother testified that, in addition to complaining that it hurt to go to the bathroom, "she didn't want anyone to wipe her, and she very seldom would wipe herself." According to mother, G had not previously had any trouble wiping herself and had been comfortable with allowing adults to do it for her. Mother testified that G also became uncomfortable with changing her clothes with anyone around, which had not previously been the case.

Mother also testified that G would no longer go to the bathroom by herself. A day or two after G told mother that defendant had abused her, mother and G were at great-grandmother's home when G had to use the bathroom. She would not go by herself, so mother accompanied her. As they walked down the hall toward the bathroom, they passed great-grandmother's guest bedroom. According to mother, G stopped and, without any prompting, said, "This is where Uncle Bob was touching me. He had me on the bed."

At the hearing on the state's motion *in limine,* the state also called Dr. Chervenak, a doctor at a child victim assessment center, as a witness. She testified that she examined G on November 22, 2000. Chervenak testified that, after giving G a physical examination, she excused mother and a nurse from the room and interviewed G privately:

> [A:] "My routine at that point is to remind them that I'm a doctor. And so I say, 'I'm a doctor and I see lots and lots of kids that have been hurt or touched in ways they didn't like.' And I pause. And I say, 'Did that ever happen to you?' And then I write down what they answer.
>
> "Q: You said those things to her?
>
> "A: Yes, I did.
>
> "Q: What happened next?

3 - FINDINGS AND RECOMMENDATION

> "A:  She said, 'Yes.' And I said to her, 'Can you tell me more about that?' And when she's saying this part, she says yes, she's looking down at the floor. And I said, 'Can you tell me more about that?' And she said, 'Uncle Bob.' And then she looked up and she looked right at me and she said, 'He was naked. He did not have clothes on.' And she was very-she had kind of a serious expression on her face when she said that. And I asked her to tell me more about-I said, 'Can you tell me more about that?' And she said, 'His knot was moving around a lot.'
>
> "And I happened to have a-I have a lot of stuffed animals in the room-and I had a stuffed bear sitting next to me, and I picked up the stuffed bear, it's about this big, and I said, 'Can you point to the bear, where is this knot? Where would the knot be on this bear?' And she pointed at the crotch of the bear, where the genital area would be located. And I asked [G], 'Where did Uncle Bob touch you?' And she said, 'In his house.' And then I asked her, 'Where on your body did Uncle Bob touch you?' And she looked at me and pointed to her genitalia and she said, 'He touched me right here.' And she said that with-it was sort of emphatic."

Chervenak testified that G indicated that defendant had touched her genitalia with his hands and with his penis. The doctor asked "if anything had touched her mouth * * *." She testified that G told her, "Yes. I was choking real bad." When Chervenak asked G what had touched her mouth, G replied, "His knot." According to Chervenak, G then spontaneously said, "I told him to stop." She next testified that she asked G whether defendant had said anything when that was happening and G "said he went, 'Okay, okay, okay,' and she put her two hands up like this." G also told her that she was crying.

The trial court ruled that G's hearsay statements to mother were admissible under OEC 803(18a)(b). At defendant's trial, as the state had anticipated, the

4 - FINDINGS AND RECOMMENDATION

court ruled that G was unavailable as a witness because she was not competent to testify. Thus, mother testified about the statements that G made at the grocery store and at great-grandmother's home. The state also called Chervenak to testify. Among other things, she testified about the statements that G made to her. Defendant did not object to that testimony.

   At the close of trial, the jury found defendant guilty of both first-degree sodomy and first-degree sexual abuse. The trial court imposed mandatory minimum sentences pursuant to ORS 137.700. It sentenced defendant to 75 months in prison, with 10 years' post-prison supervision, on the sexual abuse conviction and 100 months in prison, with 20 years' post-prison supervision, on the sodomy conviction.

*State v. Foreman*, 212 Or. App. 109, 111-14, 157 P3d 228, 230-31, *review denied*, 343 Or 223, 168 P3d 1154 (2007).

In his direct appeal, petitioner first argued that G's hearsay statements to her mother were unreliable and inadmissible based on the Oregon Evidence Code. The Oregon Court of Appeals determined that the admission of these statements did not violate the Oregon Evidence Code. *Id* at 115-16, 157 P3d at 231-32.

Petitioner also argued that G's hearsay statements to Dr. Chervenak violated the Confrontation Clause under *Crawford v. Washington,* 541 U.S. 36 (2004), which had been decided after his trial. Petitioner acknowledged that he failed to make a confrontation objection to Dr. Chervenak's testimony at trial and asked the Oregon Court of Appeals to review it as plain error.[1]

---

[1] ORAP 5.45(1) provides that "the appellate court may consider an error of law apparent on the face of the record." This provision allows the Oregon Court of Appeals to consider errors of law which are "obvious" and "not reasonably in dispute." *Ailes v.*

The Oregon Court of Appeals determined that the admission of Dr. Chervenak's statements was not plainly erroneous and affirmed the trial court's decision. *Id* at 117, 157 P3d at 233. The Oregon Supreme Court denied review.

Petitioner next filed for post-conviction relief ("PCR") in Umatilla County which was denied. Respondent's Exhibit 124. The Oregon Court of Appeals summarily affirmed the lower court without opinion, and the Oregon Supreme Court denied review. Respondent's Exhibits 129, 131, 132.

Petitioner filed this federal habeas corpus action on June 14, 2010, alleging the following grounds:

> <u>Ground One:</u> Conviction obtained by use of coerced confession.
> <u>Supporting Facts</u>: By the doctor's testimony to the jury: The jury would defer to the expert testimony by the doctor. "will [*sic*] NOT make its own credibility determination. But physical evidence of sexual abuse must accompany a medical diagnosis when presented to a jury;
>
> <u>Ground Two:</u> Denial of effective assistance of trial counsel and inadequate assistance of trial counsel.
> <u>Supporting Facts:</u> My trial counsel failed to object the doctor's hearsay statements to the jury. There was no physical evidence of sexual abuse presented to the jury.
>
> <u>Ground Three:</u> Ineffective assistance of trial counsel and inadequate assistance of trial counsel. They were NOT faxs [*sic*] from my accuser. 6th Amendment Confrontation Act.

---

*Portland Meadows, Inc.*, 312 Or. 376, 381, 823 P.2d 956 (1991).

Respondent asks the court to deny relief on this Petition because: (1) petitioner has failed to adequately plead his claims; (2) petitioner's claims do not properly allege a federal question; (3) Grounds One and Three are procedurally defaulted; and (4) Ground Two was denied in a state court decision that is entitled to deference.

**FINDINGS**

I.   **Adequacy of Pleading**

According to respondent, the claims should be dismissed because they are vague, conclusory, and lack adequate factual allegations. However, for a pleading filed by a *pro se* inmate, the claims contained in the Petition are sufficiently clear. The court interprets petitioner's grounds for relief as follows: (1) Ground One alleges that petitioner's conviction was obtained in violation of due process by the use of a coerced confession and that Dr. Chervenak should not have been allowed to testify to a medical diagnosis of sexual abuse in the absence of any accompanying physical evidence; (2) Ground Two raises a claim of ineffective assistance of counsel based on trial counsel's purported failure to object to Dr. Chervenak's hearsay statements; and (3) Ground Three raises a claim of ineffective assistance of counsel based upon trial's purported failure to object to the hearsay statements of G's mother. These are the claims properly before the court, and

7 - FINDINGS AND RECOMMENDATION

the Petition should not be dismissed for lack of identifiable claims.

## II.  Unargued and Unpled Claims

In its Response, respondent addressed all three of petitioner's grounds for relief and explained why he was not entitled to habeas corpus relief. Petitioner subsequently filed his supporting memorandum which does not argue the merits of Grounds One or Three. The court has nevertheless reviewed those claims on the existing record and determined that they do not entitle petitioner to relief.[2]  *See* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."); *see also Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims).

Petitioner's supporting memorandum argues Ground Two alleging ineffective assistance of counsel in terms of the Confrontation Clause and also argues two claims of trial court error based upon the Confrontation Clause. Petitioner's confrontation claims based on trial court error are not identified as grounds for relief in his Petition. The absence of these claims from the Petition

---

[2] With respect to Ground Three, petitioner concedes that trial counsel objected to the testimony of G's mother on confrontation grounds. Brief in Support (docket #20), p. 18.

renders them ineligible for federal habeas review. *See* Rule 2(c), Rules Governing Section 2254 Proceedings, 28 U.S.C. foll. § 2254 (requiring each habeas petition to "specify all the grounds for relief which are available to the petitioner"); *Greene v. Henry*, 302 F.3d 1067, 1070 n. 3 (9th Cir. 2002) (a court need not consider claims not raised in the petition).

### III. Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

9 - FINDINGS AND RECOMMENDATION

Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

## IV. Ground Two

Ground Two alleges that petitioner's trial counsel was constitutionally ineffective when he failed to object to Dr. Chervenak's hearsay statements. He argues that Dr. Chervenak's hearsay testimony violated his Sixth Amendment right to confrontation.

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test the Supreme Court has established to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009). First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption

that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 129 S. Ct. at 1420.

Petitioner's Confrontation Clause claim is based upon *Crawford v. Washington*, 541 U.S. 36 (2004), which held that the testimonial statements in a criminal trial of an absent witness are admissible only where the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness. The PCR trial court determined that petitioner's claim of ineffective assistance of counsel based on the lack of a Confrontation Clause objection to Dr. Chervenak's testimony lacked merit because petitioner's trial took place in 2002 prior to *Crawford*, and counsel could not be expected to foresee that ruling. Respondent's Exhibit 124.

11 - FINDINGS AND RECOMMENDATION

"*Strickland* does not mandate prescience, only objectively reasonable advice under prevailing professional norms." *Sophanthavong v. Palmateer*, 378 F.3d 859, 870 (9th Cir. 2004), citing *Strickland*, 466 U.S. at 690; *see also Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) (lawyers are not required to anticipate court decisions, and an attorney's conduct must be evaluated at the time of that conduct). Consequently, the PCR trial court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law. Therefore, relief on Ground Two should be denied.

## RECOMMENDATION

For the reasons identified above, the Petition for Writ of Habeas Corpus (docket #2) should be denied and a judgment should be entered dismissing this case with prejudice.

The court should decline to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due March 28, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

12 - FINDINGS AND RECOMMENDATION

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 9th day of March, 2011.

>       s/   Janice M. Stewart
>            Janice M. Stewart
>            United States Magistrate Judge

13 - FINDINGS AND RECOMMENDATION